**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CRIMINAL NO.  1:08CR11**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **VS.** | ) | **MEMORANDUM AND** |
| | ) | **O R D E R** |
| | ) | |
| **DAVID DARRELL DAVID** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant David Darrell

David's timely filed objections to the Magistrate Judge's Memorandum and

Recommendation (M&R), which recommended that the Court deny

Defendant's motion to dismiss his bill of indictment.  For the reasons stated

below, the Court affirms the Magistrate Judge's ruling.


**I.  PROCEDURAL HISTORY**

In June 2000, Defendant pled guilty in South Carolina to committing

a lewd act on a minor, in violation of S.C. Code Ann. §16-15.140.

**Memorandum and Recommendation, filed April 18, 2008, at 2.**

Defendant received a ten year sentence, which was to run concurrent with

a federal sentence he had also received for a firearm-related offense in violation of 18 U.S.C. § 922(g). *Id.* Defendant served his concurrent sentences in federal prison until June 2002, when he was transferred to South Carolina custody. *Id.* He was ultimately released on December 1, 2004, and at that time he was informed of his ongoing duty to register as a sex offender.[1] Accordingly, he registered as a sex offender in South Carolina on the same day.[2] *Id.*

Defendant subsequently decided to move to Pennsylvania, and he properly disclosed his plans to the authorities in both South Carolina and Pennsylvania. *Id.* **at 2-3; Defendant's Motion to Dismiss Indictment and Memorandum of Law in Support of Motion to Dismiss, filed April 1, 2008, at 15 n.5.** He was later arrested in Pennsylvania on charges of violating the terms of his federal supervised release. **Memorandum and Recommendation,** *supra***, at 3.** As a result of these charges, Defendant was returned to federal prison in South Carolina. *Id.*

---

[1] The extent of the notice given to Defendant at this time by the South Carolina Department of Corrections is somewhat unclear.

[2] He continued to keep his South Carolina registration current until at least October 2006. **Memorandum and Recommendation,** *supra***, at 2.**

On November 11, 2006, as his release date approached, Defendant received a Bureau of Prisons (BOP) form[3] which advised him that, upon his release, he would be subject to registration as a sex offender in any state in which he resided, was employed, or was a student. *Id.* Both Defendant and a BOP official signed the form. *Id.* Upon his release from prison in January 2007, Defendant returned to Pennsylvania, where he again registered as a sex offender. *Id.*

About six months later, in July 2007, Defendant was arrested in Buncombe County, North Carolina, and charged with violating N.C. Gen. Stat. § 14-208.11, which required him to register as a sex offender in North Carolina. As discussed below, the circumstances leading up to his presence in this District are hazy. Nonetheless, it is undisputed that, at the time of his arrest, Defendant had not registered as a sex offender in North Carolina.

Defendant was also indicted in this Court on February 5, 2008, and charged with failing to register as required by the federal Sex Offender

---

[3] BP-S648.051, titled "Sex Offender Registration and Treatment Notification."

Registration and Notification Act (SORNA), specifically 18 U.S.C. § 2250.[4]

**Bill of Indictment, filed February 5, 2008, at 1.**

SORNA provides, in pertinent part:

(a) Whoever –

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)   . . . .

(B) travels in interstate or foreign commerce . . . ; and

(3) knowingly fails to register . . . as required by the Sex Offender Registration and Notification Act;

shall be fined under this title and imprisoned not more than 10 years, or both.

**18 U.S.C. § 2250.**

Defendant came before the Magistrate Judge for an initial

appearance on March 3, 2008.  Following a separate hearing on March 5,

2008, the Magistrate Judge ordered that he be detained pending trial.

**Order of Detention, filed March 10, 2008, at 1.**  On April 1, 2008,

Defendant moved to dismiss his indictment.  **Motion to Dismiss**

---

[4] Once the federal indictment was filed, the State of North Carolina took a voluntary dismissal of his state charges under N.C. Gen. Stat. § 14-208.11.

**Indictment,** *supra***.** The Government responded in opposition.

**Government's Response to Defendant's Motion to Dismiss the Indictment, filed April 15, 2008.** The Magistrate Judge filed an M&R on April 18, 2008, recommending that the Court deny Defendant's motion to dismiss. **Memorandum and Recommendation,** *supra***.** Defendant timely filed his objections. **Objection to Report and Recommendations, filed April 23, 2008.**

On May 5, 2008, Defendant entered into a plea agreement with the Government, in which he stipulated that there was a factual basis for his guilty plea and reserved the right to appeal the Court's ruling on the instant motion. **Plea Agreement, filed May 5, 2008, ¶¶ 11,16.** The Magistrate Judge accepted his guilty plea on May 6, 2008. **Rule 11 Inquiry and Order of Acceptance of Plea, filed May 6, 2008.**

## II. MEMORANDUM AND RECOMMENDATION

The district court conducts a *de novo* review of those portions of a Magistrate Judge's M&R to which specific objections are filed. ***See* 28 U.S.C. § 636(b)(1)(C).** This *de novo* review is unnecessary, however, "when a party makes general and conclusory objections that do not direct

the court to a specific error in the magistrate's proposed findings and recommendations." ***Orpiano v. Johnson*, 687 F.2d 44, 47 (4ᵗʰ Cir. 1982).** "A general objection . . . has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." ***Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6ᵗʰ Cir. 1991).**

In this case, the Magistrate Judge's M&R addresses, and ultimately rejects, seven arguments that Defendant makes in support of his motion to dismiss. **Memorandum and Recommendation, *supra*, at 4-5 (summarizing the seven arguments).** In his list of objections to the M&R, Defendant specifically addresses only the second and fifth of these arguments. **Objection to Report and Recommendation, *supra*, at 2-4.** He also raises a new argument, which challenges the facts presented by the Government and relied upon by the M&R. ***Id.* at 1-2.** In accordance with 28 U.S.C. § 636(b)(1)(C) and *Orpiano*, the undersigned will review Defendant's three specific arguments *de novo*.

As to the remainder of the M&R, Defendant has raised no specific objections, other than to state generally that he "incorporates by reference

and repeats the arguments previously set forth in his motion to dismiss."

*Id.* **at 1.**  The Court has nonetheless reviewed the remainder of the M&R carefully and, finding no fault therewith, will adopt and incorporate herein the Magistrate Judge's discussion of Defendant's first, third, fourth, sixth, and seventh arguments.

## III. ANALYSIS

### A.  Factual Objections

Defendant's first specific objection addresses the M&R's provisional recital of facts, which states that Defendant moved to Buncombe County, North Carolina, with his girlfriend in either March or April 2007, and that he lived in this state and worked at a friend's auto repair shop until his arrest in July 2007.[5]  **Memorandum and Recommendation,** *supra***, at 3-4.**  This account is consistent with the Government's version of the facts.

**Government's Response,** *supra***, at 3-4.**  Defendant's version, as set forth in his pleadings, differs significantly.  He states he came to North Carolina between April and July "for a short period of time, lasting

---

[5] Defendant's initial arrest in July 2007 was based upon his alleged violation of North Carolina's sex offender registration law, not SORNA. *See* **Government's Response,** *supra***, at 4.**

anywhere from a few days to a couple of weeks," for the purpose of "work[ing] on one or more cars."  **Objection to Report and Recommendation,** *supra***, at 2.**  While he was here, he stayed with Ms. Stacy Whitkey, a North Carolina resident who is not his girlfriend but his step-niece.  *Id.* **at 1-2.**  Defendant further states:

> He was not on the payroll at the auto repair shop but instead was paid for each car that he serviced.  He always returned to his home in Pennsylvania, where he was living with his brother Ron and his sister-in-law. . . .  When [Defendant] was called to work on one or more cars, he stayed with Ms. Whitkey.  He did not notify Pennsylvania of his change in status, as required by the state, because he always remained a Pennsylvania resident.  Nor did he register as a sex offender in North Carolina because he did not become a resident and did not stay the requisite amount of time to trigger the North Carolina registration requirements.

*Id.* **at 2.**

Here, as in many criminal cases, Defendant and the Government present very different versions of the facts.  Specifically, they differ as to the intent and duration of Defendant's stay in North Carolina – facts which could go to the heart of the proceedings.

Such fact-based disputes are not proper subjects for the Court's consideration at this stage in the proceedings, as the Court has not received any evidence from the parties.  Indeed, these questions would

ordinarily be reserved for trial. ***See United States v. Mills***, **995 F.2d 480, 487 (4th Cir. 1993) (holding that "courts lack authority to review either the competency or sufficiency of evidence which forms the basis of an indictment").** Here, however, the factual conflicts are resolved by the plea agreement into which Defendant entered with the Government. In that agreement, Defendant "stipulates that there is a factual basis for the plea of guilty." **Plea Agreement, *supra*, ¶ 11.** Defendant's fact-based objections to the M&R become moot in light of this stipulation. The Court will nonetheless set Defendant's mind at ease by confining its factual assumptions herein to only the undisputed procedural history and those facts alleged in the indictment and admitted by Defendant in his plea agreement.

## B. Fair Notice of Duty to Register Under SORNA

Defendant's next specific challenge to the M&R addresses the conclusion that the indictment should not fail for lack of adequate notice of a duty to register under SORNA. **Objection to Report and Recommendation, *supra*, at 2-3.** As Defendant acknowledges, his argument goes to the *mens rea* element listed in 18 U.S.C. § 2250 –

specifically, the requirement that a defendant must "*knowingly* fail to

register." **18 U.S.C. § 2250(a)(3) (emphasis added);** *see also* **Motion to**

**Dismiss,** *supra***, at 17 (stating that the notice requirement goes to the**

**"knowing" element of the crime).** Defendant has admitted, via his plea

agreement, that there is a factual basis for this element of the offense –

that is, that he did "knowingly" fail to register. *See* **Plea Agreement,**

*supra***, ¶ 11.** Nevertheless, Defendant argues that SORNA does not

provide fair notice to those required to register. **Objection to Report and**

**Recommendation,** *supra***, at 2-3.**

### 1. SORNA and Its Applicability to Defendant

In order to fully assess Defendant's argument, a brief overview of

SORNA's requirements is necessary. Enacted as part of the Adam Walsh

Child Protection and Safety Act of 2006, SORNA requires convicted sex

offenders[6] to "register, and keep the registration current, in each

jurisdiction where the offender resides, where the offender is an employee,

---

[6] A "sex offender" is "an individual who was convicted of a sex offense." **42 U.S.C. § 16911(1).** A "sex offense" is, among other things, "a criminal offense that has an element involving a sexual act or sexual contact with another." *Id.* **§ 16911(5)(A)(i).** In this case, there is no dispute that Defendant is a sex offender within the meaning of SORNA.

and where the offender is a student." **42 U.S.C. § 16913(a).**  Registration, for SORNA purposes, includes the disclosure of extensive personal information, such as name, alias, social security number, residential address, places of employment and study, and vehicle license plates and descriptions.  *Id.* **§ 16914(a)(1)-(7).**  Jurisdictions are also required to maintain personal data on registered sex offenders, such as fingerprints, a DNA sample, a current photograph, *etc*.  *Id.* **§ 16914(b)(1)-(8).**

If a sex offender is imprisoned as a result of his sex offense, his initial SORNA registration is supposed to take place before he completes his sentence.  *Id.* **§ 16913(b)(1).**  If he does not receive a prison term for the offense, he must register within 3 days of his sentencing.  *Id.* **§ 16913(b)(2).**  As to the requirement that registration be "kept current," SORNA provides:

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction [in which he is registered] and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.  That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

*Id.* **§ 16913(c).**

Because SORNA is a relatively new statute, it is still being phased in nationwide. States have until July 2009 to implement the registration systems and databases that SORNA requires.[7] *Id.* **§ 16924(a)(1).** In addition to giving states time to catch up to the numerous requirements, SORNA also recognizes that there is a substantial population of existing sex offenders who will need to be brought up to speed on their registration. As to these offenders, SORNA provides:

> The Attorney General shall have the authority to specify the applicability of the [SORNA] requirements . . . to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with [the initial registration requirement].

---

[7] Of course, the federal government cannot literally compel states to comply with SORNA. *See Printz v. United States*, **521 U.S. 898, 935 (1997) ("The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.")** Instead, SORNA employs the usual financial incentives to induce state compliance. **42 U.S.C. § 16925(a) (describing the federal funds that will be withheld if a state fails to comply with SORNA);** *see South Dakota v. Dole*, **483 U.S. 203, 206 (1987) ("Congress may . . . further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." (internal quotation marks omitted)).**

*Id.* § 16913(d).[8]

In February 2007, the Attorney General exercised the rule-making authority conferred upon him by section 16913(d), by issuing a regulation which provided that the requirements of SORNA "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." **28 C.F.R. § 72.3.** This regulation does not exclude those sex offenders who, in the words of section 16913(d), were convicted prior to SORNA's implementation in an particular jurisdiction or who were unable to comply with the initial SORNA registration requirements for some other reason. Accompanying examples illustrated SORNA's applicability to (1) a sex offender convicted before July 27, 2006, and released from prison after July 27, 2006; and (2) a sex offender both convicted and released from prison before July 27, 2006. Crucially, the latter example states that a sex offender who initially registered under a pre-SORNA registration system, but then disappeared after a couple of years and later turned up unregistered in another state,

---

[8] The date referenced in the statute, July 27, 2006, is the effective date of SORNA. *See* **Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587.**

"could be held criminally liable under 18 U.S.C. § 2250 for the violation because he traveled in interstate commerce." ***Id.***

While the latter example is not a perfect fit for the instant Defendant, it is close. He, too, was convicted and released[9] prior to the enactment of SORNA. Also, in accordance with the factual allegations admitted in the plea agreement, he traveled in interstate commerce and turned up in a different state (North Carolina), where he was not registered under SORNA or any other registration scheme. Furthermore, he admits, via his plea agreement, that he was required[10] to register under SORNA – that is, that he either resided, was employed, or was a student, in North Carolina. ***See 42 U.S.C. § 16913(a) (setting out the conditions under which registration is required).*** Since there can be little question that sex offenders in this position are brought within the reach of SORNA by 28 C.F.R. § 72.3, Defendant's only remaining argument regarding notice – or

---

[9] More specifically, Defendant was released from the prison term associated with his sex offense conviction well before SORNA was enacted. His release from the prison term associated with his supervised release violation, however, took place after SORNA was enacted, and Defendant did in fact receive notice of his SORNA duties at that time.

[10] The first element of a section 2250 violation is that the accused be "required" to register under SORNA. **18 U.S.C. § 2250 (a)(1).**

lack thereof – is that 28 C.F.R. § 72.3 is itself invalid, because it allows the Government to bring down the hammer of 18 U.S.C. § 2250 before sex offenders have received adequate warning of their new registration duties.

It is here that we approach the nub of the dispute in this case. The Government concedes that Defendant could not have registered under SORNA in North Carolina, because this state has not yet implemented SORNA. Nonetheless, the Government contends, North Carolina – like every other state in the United States – has other sex offender reporting requirements that do apply to Defendant. **See N.C. Gen. Stat. § 14-208.11.** On this view, Defendant, although he did not have notice that he should comply with SORNA itself, nonetheless knew or should have known that he had to comply with North Carolina's registration requirements. His failure to do so violates not only North Carolina law, but also SORNA. **See Government's Response, *supra*, at 9-10 ("Registration was required and possible for sex offenders like the defendant in both North Carolina and Pennsylvania prior to SORNA. Both states had procedures in place, albeit not as expansive as the new ones under SORNA. The defendant was clearly able to comply with the duty to**

**register as he was at one time registered in South Carolina and in Pennsylvania, and therefore, not 'unable' to register.")**

Defendant, on the other hand, contends that North Carolina's failure, so far, to implement SORNA negatively impacts his ability to receive fair notice of his duty to register. He asks rhetorically, "Without appropriate guidance [from North Carolina], how does one go about registering?" **Objection to Report and Recommendation,** *supra*, **at 3.**

### 2. Fair Notice Under N.C. Gen. Stat. § 14-208.11

Because of the Government's contention that a violation of North Carolina's registration statute is also a violation of SORNA, it is a threshold question whether Defendant had sufficient notice of his duty to register under North Carolina's sex offender registration statute, N.C. Gen. Stat. § 14-208.11. If he had no proper notice of the North Carolina statute, he cannot have had proper notice of SORNA.

It is widely accepted that ignorance of the law or a mistake of law is no defense to criminal prosecution in the United States. *Cheek v. United States***, 498 U.S. 192, 199 (1991).** There are, however, a few narrow exceptions to this general rule. Most notably for purposes of this case, the

United States Supreme Court has held that "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary" before a conviction under a general criminal registration act can stand. ***Lambert v. California*, 355 U.S. 225, 229 (1957).** *Lambert* involved a challenge to a provision in the municipal code of Los Angeles, California, which required all convicted felons – regardless of where they were convicted – to register with the Chief of Police if they remained in Los Angeles more than five days. ***Id.* at 226.** Lambert, who had lived in Los Angeles for over seven years without registering, was convicted for failure to register after she was arrested for "suspicion of another offense." ***Id.***

The United States Supreme Court held that Lambert's conviction violated due process because her conduct in failing to register was "wholly passive" and "[a]t most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies[.]" ***Id.* at 228-29.** In so holding, the Court emphasized that, under the facts of that case, "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking." ***Id.* at 229.**

The North Carolina Supreme Court has definitively held that N.C.

Gen. Stat. § 14-208.11, North Carolina's sex offender registration statute,

standing alone, does not violate *Lambert*.  ***State v. Bryant,* 359 N.C. 554,**

**614 S.E.2d 479 (2005).**  The defendant in *Bryant* was convicted of a sex

offense in South Carolina, but failed to register when he moved to North

Carolina.  The North Carolina Supreme Court reasoned as follows:

> We find this case rich with *circumstances that would move the
> reasonable individual to inquire of his duty to register in North
> Carolina such that defendant's conduct was not wholly passive
> and* Lambert *is not controlling.* First, defendant had actual
> notice of his lifelong duty to register with the State of South
> Carolina as a convicted sex offender.  Second, defendant had
> actual notice that he must register as a convicted sex offender
> in South Carolina for "similar offenses from other jurisdictions"
> and had a duty to inform South Carolina officials of a move out
> of state "within 10 days of the change of address to a new
> state," which defendant failed to do. . . .  These circumstances
> coupled with *the pervasiveness of sex offender registration
> programs* certainly constitute circumstances which would lead
> the reasonable individual to inquire of a duty to register in any
> state upon relocation.

*Id*. at 568, 614 S.E.2d at 488 (emphases added).**  Defendant here is in an

analogous position to the defendant in *Bryant*, since Defendant, too, had

actual notice of his lifelong duty to register as a sex offender in the state

where he was convicted, as well as actual notice of his continuing duty to

update his registration as he moved from state to state.  Thus, under

*Bryant*, Defendant had sufficient notice of his duty to register under North Carolina's sex offender registration statute.

### 3. Fair Notice Under SORNA

The remaining question is whether Defendant's failure to register under North Carolina's registration system amounts to a violation of SORNA. Numerous district courts who have examined this issue have held that a violation of *any* registration statute is also a violation of SORNA. **E.g., United States v. Bartlett, 2008 WL 440828, at \*1 (W.D. Ark. 2008) ("A defendant is required by SORNA to comply with registration obligations as imposed by other laws."); United States v. Gould, 526 F. Supp. 2d 538, 542 (D. Md. 2007) ("An offender's registration under SORNA does not hinge on implementation in his state. . . . [The defendant] contends that his failure to register under Maryland law has no bearing on his failure to register under SORNA. [The defendant's] argument is misplaced.").** A minority of district courts, however, have held the opposite. **E.g., United States v. Barnes, 2007 WL 2119895 at \*5, 2007 U.S. Dist. LEXIS 53245 at \*17 (S.D.N.Y. 2007) ("This Court does not find persuasive the government's argument**

**that because Defendant had notice of the state requirement [to register], notice of SORNA's entirely different penalty sufficed.");** *United States v. Smith***, 528 F. Supp. 2d 615, 620 (S.D.W.Va. 2007) (holding that the defendant's "registration under West Virginia's laws was not sufficient to notify him of any requirement to comply with SORNA").**

Upon careful consideration of the current facts, the undersigned believes that a more fair result will be obtained by following the line of cases that includes *Gould* and *Bartlett*.  In so deciding, the Court is especially mindful of *Lambert*'s emphasis on the relevance of "circumstances which might move one to inquire as to the necessity of registration."  ***Lambert, supra*, at 229.**  Likewise, *Bryant* carefully examines the record for circumstances that "would move the reasonable individual to inquire of his duty to register in North Carolina such that defendant's conduct was not wholly passive."  ***Bryant,* 359 N.C. at 568, 614 S.E.2d at 488.**

Similarly, here, the Court's decision is based on the existence of several circumstances which, taken together, demonstrate that a reasonable person in Defendant's position would have had sufficient notice

that he should at least inquire about the registration duties that might be occasioned by his presence in North Carolina – regardless of whether those duties arose under N.C. Gen. Stat. § 14-208.11 or SORNA. Defendant received his first inkling of his nationwide registration duties upon his release from South Carolina state custody in December 2004. He also received thorough notice of those duties under newly-enacted SORNA, around the time of his release from federal custody in November 2006. Further, his successful registrations in both South Carolina and Pennsylvania demonstrate an understanding of these registration duties, as well as a basic ability to comply, if he desired. Finally, *Bryant*'s mention of the "pervasiveness of sex offender registration programs" bears repeating. ***Bryant, supra.*** In the three years since *Bryant*, there is no reason to believe that registration statutes have become any less widespread – indeed, given the new strictures put in place under SORNA, the opposite seems more likely. It is for all these reasons that Defendant's failure to register in North Carolina appears to be the result of an active decision on his part, rather than the type of wholly "passive" offense described in *Lambert*.

Had Defendant registered in North Carolina under N.C. Gen. Stat. § 14-208.11 – or even attempted to register and been told it was unnecessary or impossible – the undersigned would be extremely reluctant to allow a subsequent SORNA indictment to stand. But, in fact, Defendant does not appear to have made any good faith effort to conform his conduct to the law – even to those laws with which he unquestionably had the knowledge and ability to comply, such as N.C. Gen. Stat. § 14-208.11. Therefore, the Court finds that Defendant's indictment should not be dismissed due to a perceived deficiency of fair notice based on North Carolina's lack of SORNA implementation.

## IV. SORNA AND THE COMMERCE CLAUSE

Defendant's final argument addresses the M&R's conclusion that SORNA does not violate the Commerce Clause. **See U.S. Const. art. 1, § 8, cl. 3 (authorizing Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes").** In his list of objections to the M&R, Defendant argues – without citing any authority – that "SORNA has nothing to do with commerce or any form of economic enterprise. . . . If a person's mere unrelated travel in interstate

commerce is sufficient to establish the nexus with purely local conduct (registration of sex offenders in each state), then most, if not all, criminal activity would be subject to federal jurisdiction." **Objection to Report and Recommendation,** *supra*, **at 4.** The Court finds this argument unpersuasive.

As a general matter, "the Commerce Clause is a grant of plenary authority to Congress," and therefore "[t]he standard of Commerce Clause review is narrow and deferential." *United States v. Kenney*, **91 F.3d 884, 886 (7th Cir. 1996).** Consequently, reviewing federal courts must only look to see "whether Congress could have had a rational basis" for utilizing its Commerce Clause powers and to ensure "that the regulatory means chosen were reasonably adapted to the end permitted by the Constitution." *Id.* **(internal quotation marks omitted).**

The seminal case in modern Commerce Clause jurisprudence is *United States v. Lopez*, in which the Supreme Court explained that the Clause encompasses three broad categories of activity that Congress may regulate: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate

activities"; and (3) "activities having a substantial relation to interstate commerce, i.e. those activities that substantially affect interstate commerce[.]" **514 U.S. 549, 558-59 (1995).** The language of 18 U.S.C. § 2250 specifically limits SORNA prosecutions to those individuals who have traveled in interstate commerce[11] – thus indicating an unmistakable awareness of the limitations of Congressional power under the Commerce Clause. There can be no question that the interstate tracking of convicted sex offenders as they migrate around the country is a matter well within the scope of Congress's power. Other federal district courts have reached the same conclusion. *E.g.,* ***United States v. Howell***, **2008 WL 313200 at \*7-8, 2008 U.S. Dist. LEXIS 7810 at \*27 (N.D. Iowa 2008) ("Congress's authority to regulate interstate commerce and those persons engaged in interstate travel is sufficient to support the enactment of 18 U.S.C. § 2250.");** ***United States v. Mason***, **510 F. Supp. 2d 923, 931-32 (M.D. Fla. 2007) ("Congress may regulate those individuals or things that travel in interstate commerce without regard to the reason for their**

---

[11] The only other category of individuals who may be prosecuted under SORNA are those who have been convicted of a sex offense under federal law. **18 U.S.C. § 2250(a)(2)(A).** This category, of course, has no Commerce Clause implications.

**movement. [18 U.S.C. § 2250] imposes registration requirements on convicted sex offenders who travel in interstate commerce. Thus the statute has a jurisdictional nexus." (internal citations omitted)).** The undersigned, therefore, concludes that Defendant's final challenge to the M&R is meritless.

In sum, Defendant has failed to convince the Court that his indictment is flawed due to lack of a factual basis, lack of fair notice, or a violation of the Commerce Clause.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion to dismiss his indictment is hereby **DENIED**.

Signed: May 9, 2008

Lacy H. Thornburg
United States District Judge